UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

DOYLE EVERETTE HANEY,       )
                               )
         Petitioner,        )
                               )
v.                           )     No.:   3:15-CV-531-TAV-HBG
                               )
RANDY LEE, Warden,        )
                               )
         Respondent.      )

## MEMORANDUM OPINION AND ORDER

Petitioner Doyle Everette Haney, a Tennessee inmate proceeding pro se, has filed a federal habeas petition under 28 U.S.C. § 2254 challenging his drug-related convictions and resultant 30-year concurrent sentences. Having considered the submissions of the parties, the state-court record, and the applicable law, the Court has determined that the petition will be denied.

## I.    SUMMARY OF EVIDENCE & PROCEDURAL HISTORY

Haney's federal habeas petition challenges his convictions and sentences in two separate drug-offense cases originating in the Circuit Court for Cocke County, Tennessee [Doc. 1]. In Cocke County Circuit Court case no. 216, Haney was convicted on October 25, 2007, of two offenses: criminal responsibility for the facilitation of the sale of .5 grams or more of cocaine, and delivery of more than .5 grams of cocaine. In Haney's second trial, Cocke County Circuit Court case no. 215, Haney was convicted on August 27, 2008, for the sale and delivery of cocaine. The facts relevant to each case, and the subsequent post-conviction proceedings, are summarized as follows.

On August 9, 2006, the Tennessee Bureau of Investigation ("TBI") Drug Investigative Division conducted a controlled drug buy on Rock City Road in Newport, Tennessee. TBI Assistant Special Agent James Williams surveilled a purchase of crack cocaine involving undercover TBI Agent Teresa Woodward, and confidential informant Jacquelyn Dalton [Doc. 7-16 p. 67-69]. Prior to the buy, Dalton's person and vehicle were searched by Agent Woodward, and a recording and transmitting device was placed on Dalton's person [*Id*. at 77-78, 133]. Agent Williams monitored the purchase and audio-recorded the exchange, which was played for the jury at Haney's subsequent trial [*Id*. at 71, 74-75].

To facilitate the exchange, Dalton was given $100 of TBI funds in $20 bills, and Agent Woodward had an additional $60 in $20 bills to complete the purchase of an "eight ball"[1] from Haney for $150 [*Id*. at 116, 134]. At trial, the two TBI agents testified that using inexact currency was a control measure used to require the parties to talk about change [*Id*. at 73, 134].

Dalton attempted to contact Haney by telephone to arrange the purchase, but when those attempts proved unsuccessful, she and Agent Woodward went to Haney's residence on Rock City Road [*Id*. at 70, 117]. Dalton drove her own vehicle, and Agent Woodward sat in the passenger's seat [*Id*. at 117, 145]. Dalton testified that she and Agent Woodward encountered Haney and two other men at the end of Rock City Road [*Id*. at 117]. Dalton knew one of the men as "Steve" but was unable to identify the other man [*Id*.]. Dalton

---

[1] An "eight ball" is street slang for an eighth of an ounce of cocaine [Doc. 7-3 p. 84].

stopped her vehicle next to a truck, thereby orienting the passenger's side of her vehicle closest to the driver's side of the pickup [*Id*. at 117-18, 146]. Haney approached Dalton's vehicle, and Agent Woodward, who was familiar to Haney, asked him what he was doing [*Id*. at 135-36]. Haney advised that he was building a fence and asked the women what they wanted [*Id*. at 136-37]. Dalton replied that she wanted an "eight" for $150 but would need $10 in change [*Id*. at 136-37]. Haney agreed, and the women combined their cash [*Id*. at 117-18]. Haney then motioned for Dalton to come to the far side of the pickup truck, and once she complied, Haney pointed her to a cinder block, inside of which was a $10 bill and two "rocks" of crack cocaine [*Id*. at 136-37, 118]. One of the rocks fell on the ground and was retrieved by Dalton, who asked, "Is this it, just two rocks?" [*Id*. at 119]. In response, Steve stated, "I'll buy it back from you" [*Id*.]. Dalton apparently declined that offer, as she put her money in the cinder block and returned to her vehicle with the $10 bill and drugs, which testing later confirmed to be 1.3 grams of crack cocaine [*Id*. at 119, 139, 155]. At trial, Dalton testified with certainty that she purchased drugs from Haney and not one of the other two men present, though she did not observe which man took the money out of the cinder block [*Id.* at 119-20, 128].

During the transaction, which lasted an estimated three to five minutes, Agent Woodward was able to observe Dalton and Haney "from the chest up" [*Id*. at 138]. She testified that could not hear the conversation but did see the two make some sort of exchange and witnessed Dalton bend down to the ground as though she dropped something [*Id*.].

Agent Williams testified that he monitored the exchange and recognized the voices of Agent Woodward, Dalton, and Haney [*Id*. at 71, 77]. He also heard an additional, unfamiliar voice say something akin to "let me buy that back" when the sale was completed [*Id*. at 87].

Dalton, a nursing student at the time of trial, testified that she had first been approached about working as an informant by a customer while waiting tables at Lois' Country Kitchen [*Id*. at 110, 121]. Dalton, who denied she was facing criminal charges at the time she became a criminal informant, stated that both she and her mother had struggled with drug problems, and that she became an informant because she wanted to make the community better [*Id*.]. Dalton testified that she had been drug free for approximately two years at the time of trial [*Id*. at 124]. Dalton denied defense counsel's inquiries as to whether she was at risk of losing her children to social services, stating that her son lived with his grandparents, who had custody of him [*Id*. at 123-24]. Dalton did, however, confirm that she was compensated for successful drug buys [*Id*. at 115]. She also revealed that she had previously been involved in a romantic relationship with Haney but denied that she had any "hard feelings" toward him [*Id*. at 130].

Haney elected not to testify at trial [*Id*. at 161-63]. The defense put on no case-in-chief. Following closing arguments and the court's instructions, the jury convicted Haney of one count of facilitation of the sale of .5 grams or more of cocaine and one count of delivery of .5 grams or more of cocaine [*Id*. at 221]. At sentencing, the trial court merged Haney's convictions [Doc. 7-15 p. 101-02; Doc. 7-17 p. 27-28]. The trial court then

determined Haney qualified as a career offender and imposed a sentence of 30 years [Doc. 7-17 p. 30, 32]. Haney appealed. On June 20, 2012, the Tennessee Court of Criminal Appeals affirmed the judgment of the trial court. *State v. Haney*, No. E2010-02151-CCA-R3CD, 2012 WL 2343619, at *1 (Tenn. Crim. App. June 20, 2012), *perm. app. denied* (Tenn. Sept. 18, 2012) ("*Haney no. 216*"). On September 18, 2012, the Tennessee Supreme Court denied Haney's application for permission to appeal. *Id*. at *1.

Haney then faced additional charges in a second trial that began on August 27, 2008, concerning an August 4, 2006, controlled drug buy that also involved Dalton and Agents Williams and Woodward [Doc. 7-3 p. 1, 68-69]. Dalton did not testify at the second trial, but the TBI agents did. Agent Williams testified that he recorded and monitored the transaction via a transmitter that was placed on Dalton [*Id*. at 69, 91]. The audio recording of the transaction was played for the jury [*Id*. at 86-87]. The presented proof demonstrated that Agent Woodward and Dalton purchased 1.5 grams of crack cocaine "rocks" from Haney at his home for $150 [*Id*. at 94, 119]. Specifically, Dalton purchased six rocks from Haney for $80, and Woodward purchased five rocks from Haney for $70 [*Id*. at 94]. Again, Haney elected not to testify [*Id*. at 138-39].

The jury ultimately convicted Haney of the sale and delivery of .5 grams or more of cocaine [*Id*. at 185]. At sentencing, the parties agreed that Haney qualified as a career offender, and the trial court imposed two concurrent sentences of 30 years [Doc. 7-5 p. 2-7]. Haney appealed. On January 25, 2012, the Tennessee Court of Criminal Appeals affirmed Haney's convictions but remanded the case and directed the trial court to merge

Haney's convictions of sale and delivery into a single judgment of conviction. *State v. Haney*, No. E2010-02149-CCA-R3CD, 2012 WL 243747, at *1 (Tenn. Crim. App. Jan. 25, 2012), *perm. app. denied* (Tenn. May 16, 2012) ("*Haney no. 215*"). On May 16, 2012, the Tennessee Supreme Court denied Haney's application for permission to appeal. *Id.* at *1.

On June 22, 2012, Haney filed a pro se petition for post-conviction relief, alleging the ineffective assistance of trial and appellate counsel in case no. 215 [Doc. 7-29 p. 2-15]. On September 3, 2013, Haney filed an amended petition through counsel [*Id.* at 28-31]. On September 12, 2013, counsel filed a post-conviction petition in case no. 216, alleging numerous instances of the ineffective assistance of trial and appellate counsel [*Id.* at 35-39]. The post-conviction court consolidated the petitions and held an evidentiary hearing on December 16, 2013 [*Id.* at 41-42].[2]

The same appellate attorney represented Haney on the appeal of both cases [Doc. 7-30 p. 9]. Appellate counsel admitted that she had never handled an appeal prior to Haney's cases, and she conceded that many issues she raised in her appellate briefs were deemed waived for her failure to cite the record and authority for her claims [*Id.* at 27, 29-51]. Appellate counsel testified that trial counsel had mentioned that, in case no. 215, the State had extended a plea offer the morning of trial, but appellate counsel stated that she was not

---

[2] The Court notes that each case was assigned a new case number during post-conviction proceedings [Doc. 7-29 p. 41]. Case no. 215 became case no. 3457 on post-conviction review, while case no. 216 became case no. 4924 on post-conviction review [*Id.*]. In order to avoid confusion, the Court retains the original case numbers throughout the body of this opinion.

informed of the details of the offer [*Id*. at 16].  Appellate counsel further stated that Haney had multiple attorneys prior to trial counsel, and that several plea offers were extended by the State [*Id*. at 17].  She was unsure, however, of what offers were extended during trial counsel's representation [*Id*.].

Trial counsel, who had been licensed since 1985, represented Haney at the trial-court level in both cases [*Id*. at 64].  He testified that the State made a plea offer before the first trial, and that while he could not remember the exact details, he thought it might have been "19 [years' incarceration] at 30 percent [to serve]" [*Id*. at 73-74].  Trial counsel then stated that before the first trial, the plea offer might have been an agreement to charge Haney as a "range III [offender] instead of a career offender," though he was not certain [*Id*. at 123].  He only knew that the plea offer was for "a whole chunk of time less" [*Id*.].  He stated that Haney "would have gotten his best relief [] by. . . taking the offer before he had gone to trial on either [case]" [*Id*. at 74].

Trial counsel agreed that at the time of the trial in case no. 215, Haney had already been convicted in case no. 216 and had received a 30-year sentence at 60 percent as a career offender [*Id*. at 73-74].[3]  Counsel could not recall whether the offer on the first day of second trial was for a concurrent 30-year sentence [*Id*. at 90-91].  Counsel stated that, although he intended to represent Haney to the best of his ability, no evidence existed to

---

[3]  Under Tennessee law, career offenders are eligible for release after service of sixty percent of their sentence, less any credits earned.  *See* Tenn. Code Ann. § 40-35-501(f).

call Haney's guilt into question [*Id.* at 93-94]. Trial counsel opined that Haney "didn't make the right decision. He should have taken the [plea] offer" [*Id.* at 92].

Haney also testified at the post-conviction hearing [*Id.* at 126]. He stated that trial counsel told him the plea offer was "always a 30 at 60," and that if they proceeded to trial, the sentence would be "two 30s at 60" [*Id.* at 129]. He clarified, however, that whether the sentences would be "stacked," or consecutive, would be determined by the trial court [*Id.*]. Haney stated that trial counsel had never conveyed to him a 19-year offer, but that he would have accepted such a deal if it had been offered [*Id.*]. On cross-examination, Haney conceded that a 30-year concurrent plea offer might have been the only "break" offered by the State, but he stated that he was only aware of "30 years at 60 percent" [*Id.* at 146].

The post-conviction court found all witnesses credible and determined that trial counsel did not render ineffective assistance [*Id.* at 159-163].[4] On appeal from the post-conviction court's decision, Haney's claims were limited to his contention that he received the ineffective assistance of counsel when counsel failed to inform him of an alleged 19-year plea offer before the first trial in case no. 216 [Doc. 7-37]. On March 20, 2015, the Tennessee Court of Criminal Appeals affirmed the State court's denial of his petitions. *Haney v. State*, No. E2014-400462-CCA-R3PC, 2015 WL 1305553 (Tenn. Crim. App. Mar. 20, 2015), *perm. app. denied* (Tenn. July 20, 2015) ("*Haney PCR*"). On July 20,

---

[4] The trial court's written order only addresses case no. 215, finding that trial counsel did not render ineffective assistance, and that appellate counsel's performance in her appeal of that case was not constitutionally adequate [Doc. 7-29 p.46].

2015, the Tennessee Supreme Court denied Haney's application for permission to appeal. *Id*. at *1.

On or about November 13, 2015, Haney, proceeding pro se, filed a petition for writ of habeas corpus raising the following issues, as paraphrased by the Court:

Claim 1:     The State failed to comply with discovery requirements.
Claim 2:     Juror misconduct.
Claim 3:     The trial court erred when it included jury instructions for criminal responsibility.
Claim 4:     Haney was not allowed to present evidence in mitigation of sentence.
Claim 5:     The trial court erred in imposing an excessive sentence.
Claim 6:     Trial and appellate counsel were ineffective.

The Court ordered Respondent to respond to the petition, and Respondent complied by filing an answer to the petition on February 16, 2016 [Doc. 8].

## II.     LEGAL STANDARD

The Court's review of the instant petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which prevents the grant of federal habeas relief on any claim adjudicated on the merits in state court unless that adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established United States Supreme Court precedent; or (2) resulted in a decision based on an unreasonable determination of facts in light of the evidence presented. *See* 28 U.S.C. § 2254(d)(1) & (2); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

Federal habeas relief may be granted under the "contrary to" clause where the state court (1) arrives at a conclusion opposite that reached by the Supreme Court on a question of law; or (2) decides a case differently than the Supreme Court on a set of materially

indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal court may grant relief where the state court applies the correct legal principle to the facts in an unreasonable manner. *See id.* at 407-08; *Brown v. Payton*, 544 U.S. 133, 141 (2005). Whether a decision is "unreasonable" is an objective inquiry; it does not turn on whether the decision is merely incorrect. *See Schriro*, 550 U.S. at 473 ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable − a substantially higher threshold."); *Williams*, 529 U.S. at 410-11. When evaluating the evidence presented in state court, a federal habeas court presumes the correctness of the state court's factual findings unless the petitioner rebuts the presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

Federal habeas review is also limited by the doctrine of procedural default. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) (holding prisoner's procedural default forfeits his federal habeas claim). A procedural default exists in two circumstances: (1) where the petitioner fails to exhaust all of his available state remedies, and the state court to which he would be required to litigate the matter would now find the claims procedurally barred, and (2) where a state court clearly and expressly bases its dismissal of a claim on a state procedural rule, and that rule provides an independent and adequate basis for the dismissal. *See, e.g., Coleman v. Thompson*, 501 U.S. 722, 731-32, 735 n.1 (1991). A procedural default may be circumvented, allowing federal habeas review of the claim, where the prisoner can show cause for the default and actual resulting prejudice, or that a

failure to address the merits of the claim would result in a fundamental miscarriage of justice. *Id.* at 750; *see also Wainwright v. Sykes*, 433 U.S. 72, 87, 90-91 (1977). "Cause" is established where a petitioner can show some objective external factor impeded defense counsel's ability to comply with the state's procedural rules. *See id.* at 753. The "prejudice" sufficient to overcome a default must be actual, not merely possible. *See Maupin v. Smith*, 785 F.2d 135, 139 (6th Cir. 1986) (citations omitted); *see also United States v. Frady*, 456 U.S. 152, 170 (1982) (holding prejudice showing requires petitioner to bear "the burden of showing, not merely that errors [in the proceeding] created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire [proceeding] with error of constitutional dimension") (emphasis in original).

The ineffective assistance of counsel can serve as "cause" for a defaulted claim. *Coleman*, 501 U.S. at 753-5. For example, appellate counsel's failure to raise a meritorious claim of ineffectiveness by trial counsel may render the claim procedurally defaulted. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) ("[I]n certain circumstances counsel's ineffectiveness in failing properly to preserve a claim for review in state court will suffice."). However, for an ineffective assistance of appellate counsel to serve as cause for a default, that claim must itself have been exhausted in the state courts before it is presented in federal habeas. *See id.* at 453 ("[A]n ineffective-assistance-of counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted.").

The standard for assessing an ineffective-assistance-of-counsel claim is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), and it requires a habeas petitioner to satisfy a conjunctive, two-prong test to warrant federal habeas corpus relief: (1) he must demonstrate constitutionally deficient performance by counsel, and (2) he must demonstrate actual prejudice as a result of such ineffective assistance. *Strickland*, 466 U.S. 668, 687 (1984). Deficiency is established when a petitioner can demonstrate that counsel's performance falls below an objective standard of reasonableness as measured by professional norms, such that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id*. at 687-88. This Court's scrutiny is highly deferential to counsel's performance, which seeks to "eliminate the distorting effects of hindsight." *Id*. at 689. In fact, counsel is to be afforded a presumption that his actions were the product of "sound trial strategy" and undertaken with the exercise of reasonable professional judgment. *Strickland*, 466 U.S. at 689.

Prejudice is established when the petitioner can demonstrate to a reasonable probability that the result of the proceedings would have been different but for the challenged conduct, thereby undermining confidence in the reliability of the outcome. *Strickland*, 466 U.S. at 687, 694. However, an error, even if professionally unreasonable, does not warrant setting aside the judgment if it had no effect on the judgment. *Id.* at 691.

## III.    ANALYSIS

### A.    Discovery

In his first claim of error, Haney claims that the State failed to disclose that it had an audiotape of the August 4, 2006, drug purchase at his residence until the morning of trial [Doc. 1 p.3]. Haney claims that he was only granted a short window of time to review the evidence prior to trial, and he argues that since Dalton did not testify at this trial, this tape was the State's only meaningful evidence against him. Haney maintains that, as a result of this alleged discovery violation, he was prevented from subpoenaing relevant witnesses, preparing a rebuttal, or deciding whether to plead guilty [*Id*. at 4].

On appeal, the Court of Criminal Appeals dismissed this issue as waived, as counsel did not object to the allegedly sudden discovery of the audiotapes. *See Haney no. 215*, 2012 WL 243747, at *2. Respondent notes that in Haney's direct appeal brief, this issue was raised only on the basis of Tennessee evidentiary rules. *See id*. Therefore, Respondent asserts, Haney has not fully and fairly presented his constitutional claim to the State courts, such that it is technically exhausted but procedurally barred.

A federal court generally may not grant a writ of habeas corpus on behalf of a state prisoner unless he has exhausted his available remedies by fairly presenting the same federal claim to the highest state court. 28 U.S.C. § 2254(b) and (c).[5] General appeals to broad constitutional principles in a state court are insufficient to "fairly present" and

---

[5] Presentation of an issue to the Tennessee Court of Criminal Appeals is sufficient for purposes of exhaustion under 28 U.S.C. § 2254(b). *See* Tenn. S. Ct. R. 39.

exhaust a federal claim. *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996) ("We have also indicated that it is not enough to make a general appeal to a constitutional guarantee as broad as due process to present the 'substance' of such a claim to a state court."); *see also Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006) (finding "general allegations of the denial of rights to a fair trial and due process do not fairly present claims that specific constitutional rights were violated") (citation and internal quotation marks omitted).

Where the federal claim has not been fairly presented to the appropriate state courts and a state remedy is no longer available, the claim is defaulted for purposes of habeas review. *See Coleman*, 501 U.S. at 732. Here, Haney failed to present his constitutional claim to the state courts. Because a state-court remedy is no longer available to Haney due to Tennessee's time and successive-petition bars, this claim is technically exhausted but procedurally defaulted for purposes of habeas review. *Coleman*, 501 U.S. at 731-32; *see also* Tenn. Code Ann. § 40-30-102(a) (one-year statute of limitations) and Tenn. Code Ann. § 40-30-102(c) ("one petition" rule).

Procedural default notwithstanding, the Court finds Haney's claim fails on its merits. At trial, the court granted an approximate 90-minute recess to give Haney an opportunity to listen to the tape and discuss it with his family [Doc. 7-3 p. 49-50]. Trial counsel thanked the trial court for allowing Haney the opportunity to talk about the tapes with his family, stating "it has been a while since we've gone over all of these tapes" [*Id.* at 50]. After he listened to the tape, Haney raised no objection to continuing, nor did he indicate a desire to change his plea [*Id.* at 57-58].

Trial counsel testified at Haney's post-conviction hearing that he had discussed the recording with Haney, and Haney thus knew that it existed, even if he had not listened to it prior to trial [Doc. 7-30 p. 71-72]. Inasmuch as Haney was present at the time of the drug buy, he clearly had some knowledge of what the tape would disclose.

Moreover, the audiotape at issue was produced at Haney's *second* trial, where he was sentenced to 30-year sentence ordered to run concurrently to his previously imposed 30-year sentence. Therefore, the introduction of the tape did not result in Haney receiving a longer sentence. Finally, even if the tape had been excluded at Haney's trial, Agent Woodward, who purchased drugs from Haney during this controlled buy, testified to the events that were memorialized on the tape. Therefore, her testimony would have been sufficient for the jury to find Haney guilty even in the absence of the tape. Accordingly, the Court finds Haney was not prejudiced by the tape's introduction, and this issue fails to warrant relief.

### B.    Juror Misconduct

In his second claim of error, Haney claims Juror Callison, who served on the jury during his second trial, had knowledge of Haney and an interest in his incarceration, as her daughter-in-law had been having an affair with Haney [Doc. 1 p. 5]. Haney also contends that Callison's granddaughter had cocaine charges that Callison failed to disclose, and he alleges that Callison lied about knowledge of Haney and her experiences with the law during *voir dire* to ensure that she could serve on the jury [*Id.*].

This claim was raised on direct appeal, where the Tennessee Court of Criminal Appeals found:

> Next, the defendant argues that juror misconduct occurred when one juror failed to disclose her association with the defendant when asked during *voir dire*. Again, the State correctly notes that the defendant failed to make appropriate citations to the record in support of this argument. *See* Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived"). Furthermore, from our review of the evidence presented at the motion for new trial hearing, we discern that the juror did in fact disclose that her granddaughter had been associated with the defendant, although the juror was not fully aware of the nature of the defendant's relationship with her granddaughter. The juror also affirmed that she did not know the defendant. Under these circumstances, we determine this issue to be lacking in merit.

*Haney no. 215*, 2012 WL 243747, at *3.

The Sixth Amendment, made applicable to the states through the Fourteenth Amendment, guarantees a criminal defendant a trial by an impartial jury. *Morgan v. Illinois*, 504 U.S. 719, 726-27 (1992). This right guarantees the accused "a fair trial by a panel of impartial, 'indifferent' jurors." *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). A trial judge's determination of impartiality is rebuttable only upon a demonstration of clear-and-convincing evidence, thus requiring the reviewing court to determine whether the judge's decision was "fairly supported by the record." *Bowling v. Parker*, 344 F.3d 487, 519 (6th Cir. 2003) (citing *Wainwright v. Witt*, 469, U.S. 412, 433 (1985)).

In rejecting Haney's claim, the appellate court reviewed the evidence presented in Haney's motion for new trial, including Callison's testimony, and found she was not biased or partial. The Court notes that Callison testified that she did not know Haney personally but was aware that she had family members who did know him [Doc. 7-18 p. 24-25]. Apart

from an allegation of mere knowledge, Haney has failed to demonstrate how Juror Callison was biased or partial, and he has not adequately rebutted the trial court's determination. Therefore, the rejection of this claim was not contrary to, nor did it involve an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of facts in light of the evidence presented.

### C.    Jury Instructions

In his third claim of error, Haney maintains that the trial court erred in including a jury instruction for criminal responsibility in his first trial, as there was no evidence that he was a principal actor in the sale of cocaine [Doc. 1 p. 5-6]. This resulted, he claims, in a dilution of the standard of proof required at trial [*Id*. at 6].

Respondent maintains that Haney only previously presented this claim on the basis of State law, and therefore, he has technically exhausted but procedurally defaulted his federal claim. *See Haney no. 216*, 2012 WL 2343619, at *6-7. The Court agrees and finds this claim technically exhausted but procedurally defaulted for purposes of habeas review. *Coleman*, 501 U.S. at 731-32; *see also* Tenn. Code Ann. § 40-30-102(a) (one-year statute of limitations) and Tenn. Code Ann. § 40-30-102(c) ("one petition" rule).

Even if this claim were not defaulted it fails to warrant relief. On federal habeas review, a Court is concerned only with a determination of whether error of constitutional magnitude has resulted from an improper jury instruction. *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991). Such error results from an improper jury instruction only where giving

the instruction "by itself so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147 (1973).

Haney's jury was instructed regarding criminal responsibility, which allows a party to be held responsible for his own conduct or the conduct of another for which he is criminally responsible. *See* Tenn. Code Ann. § 39-11-401. As is relevant in this case, a person is criminally responsible for another's conduct if, "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense[.]" Tenn. Code Ann. § 39-11-402(2). Criminal responsibility is not a recognizable crime that requires separate indictment; it is a theory of the commission of the offense. *See, e.g., State v. Tipler*, No. W2014-00288-CCA-R3CD, 2015 WL 721030, at *5 (Tenn. Crim. App. Feb. 19, 2015) (citations omitted).

In Haney's first trial, he was ultimately convicted of delivery of cocaine and criminal responsibility for the facilitation of the sale of cocaine[6] [Doc. 7-16 p. 170]. Haney's jury was instructed that in order to find Haney criminally responsible for the facilitation of the sale of .5 grams or more of cocaine, they must find:

> 1. That the defendant knew that another person intended to commit the specific felony of the sale or delivery of cocaine in excess of .5 grams but did not have intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense;
> 2. That the defendant furnished substantial assistance to that person in the commission of the felony; and

---

[6] The Court notes that Haney's jury rejected the notion that he was criminally responsible for the sale of cocaine in his first trial, finding him guilty of the lesser-included offense of facilitation.

3.  That the defendant furnished such assistance knowingly.

[Doc. 7-16 p. 199].  At trial, Dalton testified that she arranged a drug purchase from Haney for a specific price, that Haney directed her to the location where the crack cocaine was found, and that the previously-discussed change was left in the location.  Accordingly, the Court cannot hold that Haney's trial was rendered unfair by the inclusion of the instruction, because there was sufficient evidence for the trial court to instruct the jury concerning criminal responsibility for the facilitation of the sale of cocaine.  Accordingly, the Court finds that Haney has failed to demonstrate that his trial was rendered fundamentally unfair, and relief is not warranted on this issue.

### D.    Sentencing

In his fourth and fifth claims of error, Haney asserts that he was prevented from presenting evidence in mitigation of his sentence (claim four), and that he received an excessive sentence (claim five).  Haney claims that he was not allowed to exercise his right to present mitigation evidence at sentencing, and that this issue was deemed waived on appeal due to appellate counsel's failure to cite the record or any authorities.  Haney otherwise argues that while he is technically a career offender, he was only arrested once on his prior charges.  Therefore, his sentences, he claims, do not reflect society's evolving ideas about proper punishment.

Respondent argues that neither of these claims were fully and fairly presented to the highest state court in satisfaction of the exhaustion requirement, as they were raised on direct appeal solely on the basis of dtate law.  *Haney no. 216*, 2012 WL 2343619, at *8-9;

*Haney no. 215*, 2012 WL 243747, at *3. Therefore, Respondent argues, the claims are technically exhausted but procedurally defaulted. The Court agrees. Because Haney's federal claims were never presented to the state courts, the Court finds these claims technically exhausted and procedurally defaulted for purposes of habeas review. *Coleman*, 501 U.S. at 731-32; *see also* Tenn. Code Ann. § 40-30-102(a) (one-year statute of limitations) and Tenn. Code Ann. § 40-30-102(c) ("one petition" rule).

Procedural default aside, Haney's complaint of an excessive sentence stems from his designation as a career offender. Haney attempted to rebut the accuracy of his status as a career offender by raising the issue in both cases in his motion for a new trial [Doc. 7-2 p. 75; Doc. 7-15 p. 104, 141-42]. At Haney's hearing on the motions, the trial court rejected Haney's argument [Doc. 7-18 p. 58-59]. The issues were again raised on appeal and rejected. *Haney no. 216*, 2012 WL 2343619, at *8-9 (finding no error in sentencing); *Haney no. 215*, 2012 WL 243747, at *3 (noting parties had agreed on sentence since he was career offender).

Pursuant to Tennessee law, a career offender is one who has "[a]ny combination of six (6) or more Class A, B or C prior felony convictions, and [whose] conviction offense is a Class A, B or C felony." Tenn. Code Ann. § 40-35-108(a)(1). If the offender is designated a career offender, the court has no discretion as to sentence and must impose "the maximum sentence within the applicable Range III." Tenn. Code Ann. § 40-35-108(c). In case no. 215, Haney was convicted of the sale and delivery of .5 grams or more of cocaine, a Class B felony [Doc. 7-2 at 68-69]. In case no. 216, Haney was convicted of

20

facilitation of the sale of .5 grams or more of cocaine and delivery of .5 grams or more of cocaine, Class B felonies [Doc. 7-15 p. 101-02]. For a Range III felony, Class B, the maximum sentence is 30 years. *See* Tenn. Code Ann. § 40-35-112.

At Haney's sentencing hearing following his first trial, the State introduced ten certified judgments as exhibits demonstrating that Haney committed the Class C felony offense of the sale of cocaine on November 2, November 22, November 25, November 29, December 14, and December 27 of 1993, and on January 4, January 12, and January 27 of 1994 [Doc. 7-21 p. 23-32]. Haney's 1994 prior conviction for aggravated burglary, details of which were contained in his presentence investigation report, was also noted by the trial court [Doc. 7-17 p. 29-30; Doc. 7-15 p. 94]. Therefore, Haney met the requirements to be designated as a career offender under Tennessee law.

Additionally, once Haney was properly designated as a career offender, he faced a mandatory 30-year sentence, and the trial court ran his sentences concurrently [*See* Doc. 7-5 p. 2-5]. Accordingly, based on Haney's career-offender status and the judge's lack of discretion in sentencing, no prejudice resulted to Haney from the sentencing process or the sentence itself. Therefore, even in the absence of a procedural default, these claims fail to warrant relief.

### E.    Ineffective Assistance of Counsel

#### 1.    Trial Counsel

Haney generally claims that his trial counsel failed to properly object to damning evidence, improper jury instructions, and hearsay. As an initial matter, the Court finds

these vague and conclusory claims insufficient to raise a genuine issue as to counsel's performance. *See Elzy v. United States*, 205 F.3d 882, 886 (6th Cir. 2000) (finding that a conclusory statement is insufficient to raise an issue of ineffective assistance of counsel); *Hairston v. Barrett*, No. 16-1590, 2017 WL 10399395, at *2 (6th Cir. 2017) (noting conclusory assertions will not support ineffective assistance of counsel claim). However, insofar as Haney's complaints regarding counsel's performance relate to issues previously addressed, such as the admission of the audiotape the morning of the second trial, the jury instruction on criminal responsibility, and the "hearsay" of Dalton's testimony through the tape at the second trial, the Court finds, for the reasons set forth by the Court in rejecting those claims, that Haney has not demonstrated that he was prejudiced by counsel's performance regarding those issues.

The bulk of Haney's ineffective assistance claim appears, however, to be that trial counsel was deficient in failing to convey to him a 19-year plea offer extended by the State. Haney asserts that he would have pleaded guilty but for counsel's failure to convey the offer, thereby establishing the ineffective assistance of trial counsel.

During post-conviction proceedings, trial counsel testified that prior to Haney's trials, a plea offer had been extended [*See, e.g.*, Doc. 7-30 p. 123]. Counsel thought the initial offer might have been for 19 years at 30 percent or as a Range III persistent offender rather than a career offender but was unsure of the details [*Id.* at 73, 123]. He only remembered that it was "a whole chunk of time less" than Haney ultimately received [*Id.* at 123]. He stated that Haney made the wrong decision by rejecting the plea offer before

either trial, as there was no evidence to exculpate him [*Id*. at 92]. Counsel was unsure what offer remained available after the first trial but testified that any offer still available at the time of the second trial would have reflected that Haney had already been sentenced to 30 years as a career offender [*Id*. at 74].

Haney, meanwhile, testified that he would have taken a 19-year offer if one had been offered, but that counsel never told him of any plea offer other than one for "30 at 60" [*Id*. at 129].

The post-conviction court found all the testimony credible but ultimately determined that trial counsel did not render ineffective assistance [*Id*. at 159-163]. On appeal, the Tennessee Court of Criminal Appeals noted that the plea-offer claim was not raised in Haney's pro se or amended petitions for post-conviction relief in either case, but it nonetheless addressed the issue. *Haney PCR*, 2015 1305553, at *5-6. The court noted that Haney bore the burden of proving his factual allegation, i.e., that a 19-year offer was made and not conveyed to him, by clear-and-convincing evidence. *Id*. at *6. The appellate court held:

> Because the post-conviction court credited the testimony of counsel and the Petitioner and did not make specific findings of fact relative to the plea offer, we are unable to conclude that counsel failed to convey the offer to the Petitioner. However, the court's conclusion that counsel did not provide the ineffective assistance of counsel implies the court found that the Petitioner failed to establish either that counsel failed to covey the offer or that the Petitioner would have accepted it if conveyed, or that the Petitioner failed to establish both. Therefore, based on the record currently before this court, we conclude that counsel was not deficient and that the Petitioner is not entitled to relief.

*Haney PCR*, 2015 WL 1305553, at *6.

A modified version of the *Strickland* standard applies to guilty pleas. *See Hill v. Lockhart*, 474 U.S. 52, 57 (1985). An attorney's failure to notify his client of a plea offer establishes deficient performance by counsel. *See Turner v. State*, 858 F.2d 1201, 1205 (6th Cir. 1977). To establish prejudice, however, a "defendant must show that there is a reasonable probability that, but for counsel's errors," he would have pleaded differently. *Griffin v. United States*, 330 F.3d 733, 736-37 (6th Cir. 2003) (citations omitted).

In this case, there was vacillating testimony offered regarding the timing of the plea offers and the substance of the offers prior to each trial. Haney has not produced any evidence, let alone clear-and-convincing evidence, to demonstrate that a 19-year plea offer was actually made, or that such an offer was made and unilaterally rejected by trial counsel. Therefore, the Court finds that Haney has failed to demonstrate that the rejection of this *Strickland* claim is contrary to or involves an unreasonable application of clearly established law, or that it was based on an unreasonable determination of facts in light of the evidence presented.

### 2.    Appellate Counsel

Haney also argues that he received the ineffective assistance of counsel on appeal because his appellate counsel had never handled a criminal case or appeal prior to his. He notes that his appellate counsel failed to cite the record or the proper authorities in her briefs, she briefed crimes Haney was not convicted of, and she failed to request leave to amend her brief after the state pointed out that she had waived issues by failing to cite them.

Respondent argues that Haney's claim is not cognizable, as there is no freestanding right to post-conviction counsel [Doc. 21 p. 22-23 (citing *Coleman*, 501 U.S. at 752)]. Respondent's argument is inapposite, because Haney's claim challenges the performance of *appellate*, not post-conviction, counsel, and a criminal defendant does have has the right to the effective assistance of counsel on an initial, direct appeal. *See, e.g., Evitts v. Lucey*, 469 U.S. 387 (1985).

The record before this Court does not reveal what transpired after the post-conviction court found that appellate had counsel failed to render constitutionally adequate assistance. However, the record before the Court reveals that Haney has not presented an ineffectiveness claim against appellate counsel to the Tennessee Court of Criminal Appeals [*See, e.g*., Doc. 7-29 at 48 (Notice of Appeal)]. Accordingly, this claim appears to be technically exhausted, but procedurally defaulted, on federal habeas review. *See Coleman*, 501 U.S. at 731-32; *see also* Tenn. Code Ann. § 40-30-102(a) (one-year statute of limitations) and Tenn. Code Ann. § 40-30-102(c) ("one petition" rule).

Regardless, the Court finds that Haney cannot demonstrate an entitlement to relief in the absence of a default. The Court assumes for the sake of argument that appellate counsel's performance was deficient, as her failure to cite the record and any authority resulted in the waiver of many issues. However, even though the state court relied on waiver, it went on to consider and reject most of Haney's issues on the merits. *See Haney no. 216*, 2012 WL 2343619, at *3 (electing to address sufficiency argument on merits despite waiver), *5-6 (addressing consistency of verdicts and criminal responsibility

arguments), *7 (addressing merits of jury instruction despite waiver), *8-9 (addressing alleged sentencing errors despite waiver); *Haney no. 215*, 2012 WL 243747, at *2 (finding evidence sufficient to support convictions despite waiver and addressing discovery despite waiver), at *3 (addressing juror misconduct issue), at *3 (addressing sentencing issues despite waiver).

For that reason, the Court finds that Haney has failed to demonstrate any actual prejudice as a result of his appellate counsel's performance because he has not demonstrated that any the omitted-and-thus-waived issues had merit. *See, e.g., Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986) (holding where failure to litigate claim is basis of allegation of ineffectiveness, defendant must prove merit to claim). Habeas relief on this issue is therefore denied.

## IV. CERTIFICATE OF APPEALABILITY

A petitioner must obtain a certificate of appealability ("COA") before he may appeal this Court's decision denying federal habeas relief. 28 U.S.C. § 2253(c)(1). A COA will not issue unless a petitioner makes "a substantial showing of the denial of a constitutional right" of any claim rejected on its merits, which a petitioner may do by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). To obtain a COA on a claim that has been rejected on procedural grounds, a petitioner must demonstrate "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason

would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484 (emphasis added). Applying this standard, the Court concludes that a COA should be denied in this case.

## V.     CONCLUSION

For the reasons set forth above Doyle Everette Haney has failed to demonstrate an entitlement to federal habeas relief. Therefore, it is hereby **ORDERED** that his petition for a writ of habeas corpus is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**. It is **FURTHER ORDERED** that a certificate of appealability from this decision is **DENIED**.

**IT IS SO ORDERED**.

Further, the Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be frivolous. Accordingly, this Court will **DENY** Haney leave to proceed *in forma pauperis* on appeal should he file a notice of appeal. *See* 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24.

**AN APPROPRIATE ORDER WILL ENTER**.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE